**BOIES, SCHILLER & FLEXNER LLP**

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

July 20, 2012

**VIA HAND DELIVERY & ECF**

The Honorable Paul A. Engelmayer
United States District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 670
New York, NY 10007-1312

*Starr International Company, Inc. v. Federal Reserve Bank of New York*
Civil Action No. 11-cv-8422 (PAE)

Dear Judge Engelmayer:

Pursuant to this Court's Order of July 17, 2012, Starr International Company, Inc. ("Starr") respectfully submits this supplemental letter addressing the effect on this case of Judge Wheeler's decision granting in part and denying in part the United States' motion to dismiss in *Starr International Company, Inc. v. United States*, No. 11-779C (TCW) (Fed. Cl. July 2, 2012) (the "CFC Decision") (submitted by letter dated July 11, 2012, from Robert J. Dwyer). The CFC action and the action pending before Your Honor have substantially overlapping factual allegations but involve distinct legal claims that must be advanced in the respective courts. *See* CFC Decision 11. The CFC Decision provides further support for Starr's arguments in opposition to the motion to dismiss, which should be denied in its entirety.

Preemption. Defendant Federal Reserve Bank of New York ("FRBNY") asserts that Section 13(3) of the Federal Reserve Act preempts governing corporate law requirements and immunizes the FRBNY from accountability for breaches of fiduciary duty. Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss the Am. Compl. ("Reply Mem.") 22. The CFC addressed and rejected the assertion that FRBNY's actions were, as a matter of law, within its Section 13(3) "statutory authority in conditioning its loan on a transfer of AIG equity to the Trust." CFC Decision 43. The CFC Decision held:

1. Given that "the Credit Agreement already provided a security interest in all of AIG's assets, in addition to the 14.5% interest rate on the loan," such that "there does not appear to have been anything more for the preferred stock to secure," the preferred stock was not "security" and the transaction should be treated, at the motion to dismiss stage, "as a 'purchase of' the Series C Preferred Stock for $500,000." *Id.* at 45-46.

2. "Based on the plain text of Section 13(3) and the Federal Reserve circulars . . . there simply is no express authority for the Federal Reserve to purchase equities." *Id.* at 47 (internal citation, quotation marks and ellipsis omitted).

BOIES, SCHILLER & FLEXNER LLP

Hon. Paul A. Engelmayer
July 20, 2012
Page 2 of 3

3. "[T]he only consideration for a loan prescribed by Section 13(3) is an interest rate." *Id.* at 46 (internal quotation marks omitted).

4. "[A]ttempts to distinguish between ownership of AIG stock by the FRBNY and acquisition of stock by the Trust concededly structured for the benefit of the Treasury Department" could not be sustained at the motion to dismiss stage, *id.* at 48, and FRBNY's "incidental powers" do not include the acquisition and management of AIG:

> Based on the facts currently before the Court, it is not clear why the Government would use a trust procedure unless to circumvent the Supreme Court's holding in California National. Presumably, the Government does not have the typical concerns of private sector entities when creating trusts, such as estate and tax planning. Thus, at this stage, the Court perceives no meaningful legal distinction between FRBNY and Trust ownership of the Series C Preferred Stock. *For purposes of the Government's motion to dismiss, the Court rules that the FRBNY's incidental powers under Section 4 of the FRA did not authorize it to condition the provision of exigent financing on AIG's issuance of stock to the Trust.*

*Id.* at 48-49 (emphasis added).

Reverse Stock Split. FRBNY asserts in its motion to dismiss that the "reverse stock split" did not violate its fiduciary duties because "a reverse stock split without a change in the number of authorized shares does not require a separate class vote." Reply Mem. 30 (emphasis omitted). The CFC Decision addressed and rejected this same argument in light of the allegations identifying the repeated representations regarding the independent shareholder vote and the consent order entered in the Delaware Court of Chancery. *See* CFC Decision 29-30, 34 (noting the Government "appears to have violated the spirit, if not the letter, of the order by not holding a common shareholder vote on the reverse stock split"). Based on the allegations at issue, the court concluded that "it appears that the common shareholders were entitled to such a vote under the Consent Order" and "had a right to exclude at least the holders of the Series C Preferred Stock from diluting their shares of common stock." *Id.* at 30.

Maiden Lane III. The CFC Decision rejected the argument that, as a matter of law, "FRBNY was never a controlling shareholder of AIG." Reply Mem. 26. "The parties' positions are decidedly at odds on a factual issue that cannot be resolved at this stage. For purposes of the Government's motion to dismiss, Starr has pled sufficiently that the Government obtained control of AIG and then used that control to engineer the ML III transactions." CFC Decision 39. *Compare id.* (relying on specific allegations) *with* Am. Compl. ¶¶ 72-74 (making same allegations in this case).

BOIES, SCHILLER & FLEXNER LLP

Hon. Paul A. Engelmayer
July 20, 2012
Page 3 of 3

      Standing. Contrary to FRBNY's argument, Reply Mem. 11, because "the Government extracted from the public shareholders, and redistributed to itself, a portion of the economic value and voting power" due to the common stock shareholders, the CFC Decision concluded that Starr had standing to assert direct claims, CFC Decision 18 (internal quotation marks omitted). "Starr has pled facts sufficiently alleging a harm to the suing stockholders independent of any harm to AIG and as such, has standing to advance its expropriation claims directly." *Id.* at 13. The CFC Decision found that Starr there—as here—had adequately alleged the "two independent aspects" required for such a direct claim. *Id.* at 14-15. "Whether styled as a takings claim or a breach of fiduciary duty claim, the Plaintiffs here, like those in Gatz and Rosette, seek compensation for the improper extraction of the economic value and voting power associated with their shares of stock." *Id.* at 17.[1] Moreover: "If Starr were to prevail on its derivative claim only, any recovery would go to AIG, with the Government receiving an amount corresponding to its ownership percentage. Because the party that suffers the alleged harm should be the beneficiary of any recovery, the Government's continuing ownership interest in AIG provides further support for the view that Plaintiffs have standing to bring a direct claim." *Id.* at 18. The CFC Decision applied this doctrine in the context of constitutional takings claims, and so the argument for applying it here, where Starr alleges the same claims addressed in *Gatz* and *Rosette*—breach of fiduciary duty—is even stronger.

      The CFC Decision also recognized: "In light of the purpose underlying the demand requirement" and interests of judicial economy, where, as here "AIG—the party the demand requirement was meant to protect—has not sought to enforce its right to a demand but instead, has requested that the Court defer ruling on the issue," deferral is appropriate. *Id.* at 19. The same reasoning applies to this action.

                                                                             Respectfully submitted,

                                                                             Robert J. Dwyer

cc:      Counsel to all parties (by ECF and e-mail)

---

[1] The CFC Decision concluded "that the question of when the purported dilution occurred is a factual one." CFC Decision 17. In so holding, the court noted that it did "not have before it the September 16, 2008 term sheet." *Id.* Here, although FRBNY included the term sheet with its Reply Memorandum, the term sheet does not commit FRBNY to making a loan—and does not require an equity transfer—until, at a minimum, certain "conditions precedent" are met, including "[s]atisfactory corporate governance arrangements." Suppl. Decl. of John S. Kiernan in Further Supp. of Def.'s Mot. to Dismiss the Am. Compl. Ex. 8. The term sheet also expressly identifies the need for subsequent "Shareholder Approval." Thus, the term sheet does not contradict the allegation that control of AIG passed to FRBNY prior to its acquisition of equity in AIG. Moreover, "[e]ven if the Government had the contractual right under the Credit Agreement to convert its preferred stock into 79.9% of AIG common stock, it was unable to do so prior to the reverse stock split." CFC Decision 22 (internal citations omitted).